CHARLES GAYLOR, TRUSTEE, vs. WILLIAM C. HARDING AND OTHERS.

Moveable machinery in a factory was mortgaged, and the machinery not specifically described, and no possession was taken by the mortgagees—the mortgage containing a provision that the mortgagors should remain in possession. The mortgagors afterwards, and before possession taken by the mortgagees, went into insolvency. In an action of trover brought, by the trustee in insolvency for the machinery, against the mortgagees who had since taken possession, it was held—1. That the mortgage was not good against creditors, affirming the decision in *Swift* v. *Thompson*, 9 Conn., 63. 2. That it did not affect the case that the mortgage contained a provision for the continuance of the mortgagors in possession. 3. That the trustee in insolvency represented creditors, and could take advantage in their behalf of the constructively fraudulent character of the conveyance.

A petition for a foreclosure had been brought by the mortgagees to which the trustee in insolvency was made with others a party respondent, and a decree of foreclosure had been passed and the time limited for redemption had expired and the mortgagees had taken possession. Held that the right of the trustee, being adverse to the claim of the mortgagees and not a right to redeem, was not affected by the decree, and that he could recover in trover the value of the property.

TROVER for a quantity of machinery and manufacturing implements; brought to the Superior Court in Fairfield County. The plaintiff sued as trustee in insolvency of the Mill River Woolen Manufacturing Company; the defendants were partners under the name of Harding Brothers & Company and claimed the property under a mortgage of the insolvents made prior to their insolvency. The following facts were found by a committee:

The articles described in the declaration, and demanded in the action, are of the value in the aggregate of $19,718.36. All the property originally belonged to a corporation known as the Mill River Woolen Manufacturing Company. This company made an assignment in insolvency in the probate court for the district of Stamford on the 23d day of May, 1867, and the plaintiff was appointed trustee by the court on the 3d day of June, 1867, and thereupon the property came into his hands, as trustee, and was duly inventoried.

The defendants are mortgagees of the corporation, by a

mortgage deed dated Sept. 12th, 1866. The property conveyed by the mortgage, (except a portion not affected by the present suit,) was described therein as follows:

"A certain piece of land, with the buildings thereon, lying in said Stamford, and being the same premises conveyed to the grantors by Thomas S. Hall, by deed dated January 30th, 1862, and recorded in the records of land of said Stamford, in book 39, page 177, to which deed for a description of the premises reference is had; together with all and singular, the privileges and appurtenances thereunto belonging; together also with all the machinery, tools and implements contained in the said buildings; which said premises and buildings are now used and occupied by us in carrying on the business of manufacturing; also all machinery, tools and implements which may from time to time be added to or substituted for those now upon said premises and in said buildings; a schedule of the principal part of said machinery, tools and implements being hereunto annexed."

The condition of the mortgage was as follows:

" This deed is on condition, that whereas an agreement was on the 22d day of June, 1866, entered into by and between the said grantors and the said grantees, of the following tenor, that is to say:

" This agreement, made and entered into by and between the Mill River Woolen Manufacturing Company, a joint stock corporation, organized under the laws of the state of Connecticut, and located at Stamford in said state, and Harding Brothers & Co., of the city of New York, witnesseth,—that the said Mill River Woolen Manufacturing Company agrees to consign to said Harding Brothers & Co., for sale on commission, their stock of manufactured goods now on hand, and also the entire production of the manufacturing establishment now carried on by them at said Stamford, from time to time, as their goods are manufactured and ready for market, for the period of three years from the date hereof. And in consideration thereof the said Harding Brothers & Co. agree to receive said goods, so consigned to them, at their place of business in New York, for sale on commission, and to use

their best efforts to keep the goods so consigned sold up at the market price thereof, and to make the usual advance on all goods so consigned, which is three-fourths of the market value of the same; and in addition to such advance to allow said Mill River Woolen Manufacturing Company a line of credit not exceeding the sum of $75,000 or to extend beyond said period of three years, which credit is to be used as follows: * *. * It is agreed that said Harding Brothers & Co. shall be allowed a commission on sales of seven per cent., which per cent. includes usual charges, commission and guaranty, but does not include interest. * * * It is further agreed that the said Mill River Woolen Manufacturing Company, in order to secure the performance of the foregoing agreement on their part, shall execute and deliver to said Harding Brothers & Co. a mortgage of the entire mill property, both real and personal, belonging to them, but the said company expressly reserve the right to relieve their property from the mortgage and incumbrance at any time within said three years, as well as after that time, by adjusting their account with said Harding Brothers & Co., and paying to them whatever may be due. It is also expressly agreed that the said Mill River Woolen Manufacturing Company will keep the mortgaged premises at all times fully insured against fire, and assign the policy or policies of insurance to said Harding Brothers & Co., by way of additional security. This agreement shall take effect and bear date as of the 22d day of June, 1866, on which day the same was in fact made, and from which date the same has been acted upon by the parties hereto. It being understood and agreed by the parties hereto, that, whenever during said term of three years, the said Mill River Woolen Manufacturing Company shall pay and liquidate the entire amount of credit furnished by Harding Brothers & Co., pursuant to the foregoing agreement, (and any other indebtedness to them,) the said Mill River Woolen Manufacturing Company may, at their pleasure, discontinue their consignments to said Harding Brothers & Co., and close the account. Now, therefore, if we, the said grantors, shall well and truly perform all things in said agreement on our part to

be performed, and shall protect, indemnify and save harmless the said grantees from all loss, cost or damage on account of the credit extended to us by them, as in said agreement set forth, and shall well and truly pay all drafts or obligations, with the renewals thereof, drawn by us in pursuance of said agreement, then this deed shall be void."

The defendants brought their petition to foreclose the mortgage to the Superior Court for Fairfield County, held on the 2d Tuesday in August, 1867, making the Mill River Woolen Manufacturing Company and the plaintiff respondents. The court at the same term passed a decree of foreclosure, foreclosing the corporation, unless the debt should be paid, on the first Monday in November, 1867, and the plaintiff on the first Monday in December, 1867. The mortgage debt was not paid, and the decree became absolute. The defendants took possession of the mortgaged premises, including the property sued for, (claiming that the same was conveyed to them by the mortgage,) on or about the 20th day of November, 1867. The plaintiff consented to their taking possession of the property conveyed by the mortgage, but claimed that the property in dispute did not pass by the mortgage as against creditors, and did not consent to their taking possession of that. The defendants converted all the property to their own use prior to the commencement of the present suit.

None of the property claimed in the suit is particularly described in the mortgage or in the schedule thereto attached; but certain pieces of machinery included in the claim (and described in a schedule appended to the finding, but which it is not necessary to mention more particularly here,) are the same or similar in kind, and used for similar purposes, with some of those enumerated in the schedule appended to the mortgage. The remaining articles claimed were all in use in the mill, or liable to be required for use at any time, and were necessary to the successful and convenient operation of the mill. A part of the property in dispute was used, or designed to be used, as implements of, or in connection with, the machinery named in the schedule attached to the mortgage; but the evidence did not enable the committee to distinguish the part

so used or designed to be used. The committee also found the values of the different classes of the property, so far as the same was classified in the finding, but, in the disposition of the case made by the court, these details are not important.

If, upon the foregoing facts, the law should be held to be so, that the title to no part of the property in question vested in the defendants by virtue of the mortgage deed, or the decree of the Superior Court passed thereon, or both combined, as against the plaintiff, then the committee found that the plaintiff was entitled to recover of the defendants the sum of $19,718.36, with interest from the 20th day of November, 1867; and that if the title to a part of the property, and not to the whole, should be held to be so vested in the defendants, the value of that so vested should be deducted from the value of the whole, and that the plaintiff was entitled to recover only the balance,,with like interest; but if the title to all the property should be held to be so vested in the defendants, then the committee found the issue for the defendants.

Upon these facts the case was reserved for the advice of this court

*Curtis*, for the plaintiff.

1. A mortgage of personal property, unless made in conformity with the 3d and 4th sections of the statute against fraudulent conveyances, (Gen. Statutes, tit. 26,) is fraudulent and void as to creditors, except where a delivery of the property accompanies the mortgage. *Swift* v. *Thompson*, 9 Conn., 63. Such mortgage, to except it from the rule of law abovementioned, must contain a particular description of the machinery and implements mortgaged. *Croswell* v. *Allis*, 25 Conn., 301, 314; *Howe* v. *Keeler*, 27 Conn., 558. The property mortgaged must, by the terms of the statute, be machinery and implements contained and used in a manufacturing or mechanical establishment. A large portion of the property claimed by the defendants under their mortgage was not in use. A portion was never in the establishment until it was received by the plaintiff after the assignment, and was never in the hands of the company at all. A large

portion was not engines, machinery or implements, in any sense of the terms, and a portion was not implements or machinery necessary for the purpose of manufacturing, and was not of that description of implements contemplated by the statute.

2. The fact that the trustee permitted the defendants to take possession of the real estate, and such property as clearly belonged to them by the mortgage, cannot be construed into an intention on his part to allow them to acquire title to property not clearly within the mortgage. The fact that a portion of the property was afterwards surrendered to the trustee by the defendants clearly shows that the defendants did not claim that the mortgage covered the whole property. The title to the property became absolute in the trustee for the purpose of the trust at the time of the assignment, and he could not divest himself thereof by any subsequent act. A trustee in insolvency by his acts and admissions cannot divest himself of the trust property. If he can do so, then he might deprive the general creditors of all interest in the trust estate.

*Child*, for the defendants.

*First.* The defendants acquired by their mortgage a good title to all the property claimed by the plaintiff.

1. The machinery and implements under the description of them in the mortgage, passed to the mortgagees. *Rowan* v. *Sharp's Rifle Mfg. Co.*, 29 Conn., 282, 295, 328; *Walker* v. *Vaughn*, 33 id., 583. The manifest intention of the mortgage was to secure future advances upon the available security of the mill property of whatever kind, *in esse* and *in futuro*. *Harding* v. *Mill River Mfg. Co.*, 34 Conn., 458. And against this plaintiff as well as against the mortgagors. The phrase used is broad and conveys all machinery, tools and implements, *in esse* and *in futuro*; of all which the mortgagees took possession. By the finding all the articles sued for were in use in the mill, designed for use therein, or had passed into the possession of the mortgagees, and were therefore comprised in the contemplated security. The possession

was given by the assignee of all that passed by the mortgage. And the defendants took possession of all the property, after decree of foreclosure against the plaintiff, as well as his assignor.

2. The articles acquired by a mortgagee pass, as already seen, where there is a foundation of interest in the grantor. 2 Hilliard on Mortgages, ch. 43, § 12. And the description is broad enough to cover all claimed by the plaintiff. *Goulding* v. *Swett*, 13 Gray, 517 ; *Harding* v. *Coburn*, 12 Met., 333. And for the purposes of this case property subsequently acquired passes to the mortgagees as if existing at the time of the mortgage. *Walker* v. *Vaughn*, supra. The articles added, by right of accession follow the title to the articles for which they are substituted. *Holly* v. *Brown*, 14 Conn., 255.

*Second.* If then all that was *in esse* vested in the mortgagees, and all that was *to be acquired* vested in them if possession had been taken, the only questions remaining are—1st. Can a mortgagee take possession against a trustee in insolvency of premises mortgaged by such trustee's assignor ? 2d. Is the possession taken by the mortgagees sufficient ?

1. It does not appear when any of the property was placed in the mill ; whether prior to or subsequent to the mortgage to the defendants. If prior thereto, we claim that no possession was required, the general words of description and the schedule being sufficient ; in which connection we ask the court to notice that the mortgage was given in September, 1866, while the assignment was in May, 1867—a brief interval ; but in addition thereto we claim that the assignee took no more than his assignor had to impart ; and hence, that inasmuch as against the assignor our possession would be complete, as we have already shown, it would also be as against his assignee in insolvency. *Walker* v. *Vaughn*, supra. In the cited case it does not appear from the finding that Walker ever took possession, or that Smith, Daniels & Co. did. It was claimed by counsel and held by the court that a mortgage of personal property to be acquired *in futuro* was valid as against *all persons* as soon as possession was taken by the

mortgagee. The trustee's counsel claimed the mortgage to be void and not to be healed by possession, but the court held otherwise. We contend that the first thing to be regarded by the court is the *bona fides*; that in addition thereto, if the description is sufficient to put the world on guard, as it is here, the mortgagee's claims are to be recognized if practicable; and that, if such elements exist, the taking possession by the mortgagees as against any person, makes operative the *in futuro* provision of the mortgage. This same mortgage is interpreted and passed upon by this court in *Harding* v. *Mill River Manufacturing Co.*, 34 Conn., 458, and as against the assignee also. We claim, therefore, that as against the assignee we can take possession; that his duty is merely to settle the estate of the insolvent, and that he has no powers beyond these. *Palmer* v. *Thayer*, 28 Conn., 237. That he takes subject to all equities against the assignor. Id.; *Vansands* v. *Middlesex County Bank*, 26 Conn., 153; *Mitchell* v. *Winslow*, 2 Story, 635. And unless fraud appears, the mere fact of *occupation* by the assignee does not interfere with *possession* by the mortgagees. *Meade* v. *Smith*, 16 Conn., 360. See also the criticism upon *Swift* v. *Thompson* in *Palmer* v. *Thayer*, 28 Conn., 245, and also note that *Swift* v. *Thompson* was decided before the statute as to mortgages of this class was passed. The case of *Rood* v. *Welch*, 28 Conn., 157, differs essentially from the case at bar. In that case the mortgage was held void, because by reason of the uncertainty of description it was impossible to tell what obligation was created, and being *void* the mortgagee had no rights thereunder. Here we claim that the intent to pass all connected with and incidental to the mill property is apparent, and included in the description. *Sprague* v. *Lisbon*, 30 Conn., 19.

2. The possession taken gave the mortgagees possession and control, as found by the fact of conversion of the articles, and also by the schedule annexed to the finding. The committee does not find the intent of the mortgagees or of the assignee in giving possession as a fact. It is to be derived from all the circumstances. We claim that all the articles sued for were intended to be embraced in the mortgage, and

that under the reasoning of the Court in *Capen* v. *Peckham*, 35 Conn., 94, it is perfectly apparent, taking into consideration the " nature and adaptation" of the articles to the uses and purposes for which they were applied, that the entire property, *quoad* the world and *inter partes*, was intended to be included in the description, and is so far a part thereof, if indeed it is not of the realty, as to pass legally under the description. *Alvord Carriage Manufacturing Co.* v. *Gleason*, 36 Conn., 86.

SEYMOUR, J. This is an action of trover, to recover for the alleged conversion by the defendants of a large amount of property, mostly machinery pertaining to a woolen manufacturing establishment.

Both plaintiff and defendants claim title under the Mill River Woolen Manufacturing Company, the original owners of the property.

The plaintiff claims as trustee in insolvency by an assignment dated May 23d, 1867, under which the property came into his hands and was duly inventoried. The defendants claim as mortgagees by deed dated September 12th, 1866.

None of the property in dispute is particularly described in the mortgage deed, nor enumerated in the schedule thereto attached. The deed was however duly recorded, and general words of description are used which, as between the parties, would embrace and convey all the machinery. After a description of the real estate the deed goes on to say, " together with all the machinery, tools and implements contained in said buildings ; also all machinery, tools and implements which may from time to time be added to or substituted for those now used upon said premises and in said buildings."

Some of the property described in the plaintiff's declaration is manifestly fixtures, and passes as such with the real estate. For reasons hereinafter stated we shall advise a further enquiry in regard to what of it is real and what personal, and now confine our attention to such of the property as is personal, and the bulk of it is clearly such.

By the condition of the mortgage deed the mortgagors

were to continue in the possession of the real and personal estate and carry on business as they had done, and no possession was taken by the mortgagees until November 20th, 1867, at which time they did take possession of the entire mortgaged premises, including the property in dispute ; and it is for this taking that the present action is brought, claiming the taking to have been unlawful.

Two important questions are presented by the record. 1st. Is the conveyance of the property, without possession taken by the mortgagees, good under the circumstances against creditors ?  2. Does the plaintiff as trustee, claiming by assignment from the Mill River Manufacturing Company, stand as a creditor would do who had attached the property, in a position to attack the conveyance ?

We have a statute under which a valid mortgage of machinery may be made and the mortgagor still retain possession ; but it is not claimed that this mortgage describes the machinery in the manner and with the particularity which the statute requires.  The defendants therefore take no benefit of the provisions of that statute, and the main questions in this case are the same which were decided in *Swift* v. *Thompson*, 9 Conn. R., 63, and we are called upon to say whether we will abide by the rulings in that case or whether we will overrule them.  In that case the court were unanimous in holding that the ordinary machinery of a cotton mill is personal estate, and that it is subject to the same rules as other personal property respecting the necessity of a change of possession to perfect the title of the vendee or mortgagee against creditors.

As already stated, the bulk of the property for the conversion of which this action is brought is personal, but some of it is obviously parcel of the realty and passes as such with the real estate.  The attention of the committee before whom the cause was tried does not appear to have been directed to a separation of the permanent fixtures from the moveable machinery, and we advise that a further hearing be had for the purpose of making such separation.  In regard to the moveable machinery and other personal property, we think,

in the first place, that the law of Connecticut requires that a change of possession should accompany the mortgage, and without such change the property is open to attachment by creditors of the mortgagor. On this point the case of *Swift* v. *Thompson* is, we think, decisive. The two cases are alike, except that in the case of *Swift* v. *Thompson* there was no provision in the mortgage itself for continued possession by the mortgagor. We think this difference cannot affect the result. It is the continued possession of the mortgagor by consent of the mortgagee which marks the transaction as constructively fraudulent against creditors, and it can make no difference whether the consent of the mortgagee be, as in the present case, expressed in the writings, or be tacit and implied, as in the case of *Swift* v. *Thompson*. Thus far the law of Connecticut has been uniform and unquestioned. But it is strenuously contended that in a case where there is no evidence of actual fraud, and where the fraud is merely constructive from retention of possession by the mortgagor, an assignee in insolvency is not an attaching creditor, and not entitled to the privileges of such a creditor. The argument is that the assignee takes by conveyance from the mortgagor and therefore takes only the same rights which the mortgagor himself has, and that as the mortgagor cannot set aside his own conveyance so his assignee in insolvency cannot. There are cases where the equity of the assignee in insolvency has been decided to be less than that of an attaching creditor, but such assignee has always been held in this state to be the representative of creditors in respect to treating as void all conveyances actually or constructively fraudulent.

In giving the opinion of the court in *Rood* v. *Welch*, Judge SANFORD says, (28 Conn. R., 163, 4,) " The possession of the property-being retained by the mortgagor, the mortgage is to be regarded as *primâ facie* fraudulent and void, so that the mortgagee has no title to interpose against the trustee's claim." So in 29 Conn. R., 254, the same judge says—"A conveyance which is deemed fraudulent and void against an attaching creditor himself, must be invalid also as against a trustee, who stands in the place of and represents creditors."

Gaylor *v.* Harding.

These authorities are so decisive that we have no occasion to re-examine the question on principle.

The defendants brought a petition to the Superior Court and obtained a decree of foreclosure of their mortgage. The trustee was made party respondent to that petition, but did not appear. The decree is in the usual form, cutting off all rights of redemption. It is now suggested that this decree has some bearing on the rights involved in the trial before us. But the decree does not purport to decide what property passed by the mortgage deed; it only bars all rights of redemption in whatever property the mortgage embraces. The plaintiff here sets up no rights subject to the mortgage, and no rights that can be barred by the decree. The rights which the plaintiff here sets up are in opposition and adverse to the mortgage, and not mere rights to redeem.

Another claim was made by the defendant's counsel, namely, that the trustee had allowed the defendants to take possession of the property, so that they may be regarded as having taken actual possession before suit brought, but the trustee was in possession of the property as such on the 3d of June, 1867, and the possession taken by the defendants was about the 20th of November, 1867. The plaintiff claimed the property in dispute as trustee. We think it clear that he waived none of his rights as such in the transaction alluded to in this claim of the defendants. He merely abstained from resisting the removal of the property by the defendants, leaving them to take it at their peril.

We therefore advise that the plaintiff is entitled to judgment for the value of so much of the property described in the declaration as is personal estate; and advise that a further hearing be had to ascertain whether portions of the property are not permanent fixtures which pass as part of the real estate.

In this opinion the other judges concurred.