THE CITY NATIONAL BANK *vs.* ROBBINS B. STOECKEL, RECEIVER, ET ALS.

Third Judicial District, Bridgeport, October Term, 1925.

CURTIS, KEELER, MALTBIE, HAINES and JENNINGS, Js.

In this State, the right of a judgment creditor to file a lien against the real estate of his debtor is wholly a creature of statute, and was intended by the legislature as a substitute for proceedings by way of execution, to be adopted at the option of the creditor.

If filed within the time fixed by statute, and against real estate which was attached at the commencement of the action, the judgment lien relates back to the date of the attachment; but it does so as a new and separate lien and not merely as a continuance of the lien of the attachment.

Section 5234 of the General Statutes provides that no judgment lien "shall be valid as to any real estate or any interest therein which might not have been levied upon under an execution on the same judgment, at the date of filing such lien." *Held* that this provision was intended to describe the kind of property which might be subjected to the lien, and not to make the remedy by lien co-extensive with the remedy by execution in the sense that the validity of the lien would depend upon whether the property was, at the date of filing, liable to be taken on execution.

The termination of appellate proceedings in this court is properly described as a "judgment."

A judgment of this court ordinarily awards costs and may, within the constitutional limits of appellate jurisdiction, award damages; and an execution may be issued, and a judgment lien filed, upon it, but only for the purpose of recovering the amount due under its terms and not that due under the terms of the judgment of the trial court from which the appeal was taken.

City National Bank *v.* Stoeckel.

Referring to the provisions of § 5232 of the General Statutes that any person having "an unsatisfied judgment" may file a certificate of lien against the real estate of his debtor, § 5233 provides that "such judgment, from the time of filing such certificate, shall constitute a lien upon the real estate described in such certificate; and if such lien be placed upon real estate attached in the suit upon which such judgment was predicated, and within four months after such judgment was rendered, it shall hold from the date of such attachment." *Held* that the phrase "such judgment" in § 5233 relates to the judgment of the trial court and not to the judgment of this court upon appeal; that the period of four months within which the lien must be filed in order "to hold from the date of such attachment" was not extended by an appeal to this court; and that, therefore, the judgment lien filed by the R. Co. in the present case more than four months after it had obtained judgment in the Superior Court against the G. Co., though less than four months after that judgment had been affirmed by this court upon appeal, did not hold from the date of the attachment at the commencement of the action, but only from the date of filing, and thus constituted an incumbrance subsequent to the plaintiff's mortgage upon the same real estate given after the attachment but before the lien was recorded.

A judgment creditor, who fails to file his statutory lien, does not acquire an equitable and inchoate lien as against other creditors merely because they have knowledge of the judgment.

The plaintiff's mortgage recited an indebtedness from the G. Co. of $38,950, "as evidenced by its sundry promissory notes" and was conditioned upon the payment of "said note and notes for the same amounts or other amounts in renewal thereof." *Held* that this mortgage was not open to the objection that it insufficiently defined the debt secured, since the "renewal" notes for "other amounts" therein referred to were obviously those which might be taken in substitution of the original notes to represent merely an increase in the original indebtedness by accumulations of interest, or a decrease due to partial payments.

A mortgage of real estate and personal property which merely describes the latter as "all machinery, tools, implements, fixtures, and other personal property tangible and intangible of every kind and description located in said buildings and being situated upon the said first piece of land," does not, as to the personalty, meet the requirements of § 5206 of the General Statutes, and is, to that extent, invalid against the mortgagor's receiver.

It is the duty of a receiver to administer the property transferred to him by his appointment, primarily for the benefit of creditors; and if, upon an appeal to this court in proceedings to

which he is a party, it *is* apparent that the judgment of the trial court is prejudicial to the interests of the creditors because of his failure or neglect to urge a valid and legitimate claim in their behalf, this court cannot overlook the defect, but will proceed to remedy it upon its own motion.

In an action to foreclose two mortgages of realty and personalty upon property of a corporation in the hands of a receiver, where the personalty in the later mortgage is insufficiently described to meet the requirements of the statute, the right of the receiver to claim a marshaling of the securities under the earlier mortgage is subject to the superior right of the mortgagor to full payment of both mortgage debts.

In such a case, the decree of foreclosure by sale may order a separate disposal of the real and personal property, unless the parties stipulate that they may be sold together and the amount realized be taken to represent both in certain agreed proportions; or the trial court may decree a separate sale of each kind of property, reserving the right to refuse a ratification of such a sale and the further right to order a new sale at which both shall be sold together.

The rights of the parties to a fund or funds realized from a foreclosure sale must, under § 5228 of the General Statutes, be determined by way of supplementary judgment.

Argued November 6th, 1925—decided January 28th, 1926.

ACTION to foreclose a mortgage, brought to the Superior Court in Fairfield County where the plaintiff's demurrer to the answer and cross-complaint of the defendant The Remington Arms Union Metallic Cartridge Company was overruled in part and sustained in part (*Avery, J.*), and the cause was thereafter tried to the court, *Nickerson, J.;* judgment rendered for the plaintiff fixing the amount of the mortgage debt, establishing priorities among the defendant lienors, and ordering a foreclosure by sale, from which the plaintiff and the defendant The Remington Arms Union Metallic Cartridge Company appealed. *Error on plaintiff's appeal; judgment set aside and cause remanded for entry of judgment for plaintiff in accordance with the opinion. No error on Arms Company's appeal.*

*Carl Foster*, for the plaintiff.

*Homer S. Cummings* and *Raymond E. Hackett,* for the appellant (defendant The Remington Arms Union Metallic Cartridge Company).

*Joseph G. Shapiro,* for the appellant (defendant George B. Clark, Receiver).

MALTBIE, J.   The plaintiff is seeking to foreclose two mortgages executed by the Gaynor Manufacturing Company.   One of the two principal issues has to do with the question of priority between the second of these mortgages and a certain judgment lien filed by the defendant The Remington Arms Union Metallic Cartridge Company, upon the same property described in the mortgage.   The court (*Avery, J.*), on demurrer to the answer of the Arms Company, held that the judgment lien had precedence, and from that decision the plaintiff has appealed.   The facts are simple:   On October 27th, 1917, the Arms Company began suit in the Superior Court against the Gaynor Manufacturing Company, and attached its real estate; April 24th, 1922, judgment was rendered in favor of the Arms Company; April 27th, 1922, the Gaynor Company filed a notice of appeal to this court, and thereafter perfected its appeal; April 5th, 1923, this court gave its decision affirming the judgment of the Superior Court; and May 24th, 1923, the Arms Company filed its judgment lien upon the real estate it had attached.   Meanwhile, on September 27th, 1922, the Gaynor Company had given to the plaintiff the mortgage in question. The plaintiff claims that the mortgage has priority over the judgment lien upon the ground that the latter was not filed within such time after the judgment as would make it effectual to relate back to the date of the attachment.   The correctness of this claim depends upon the proper construction to be placed upon that

portion of § 5233 of the General Statutes which provides that if a judgment lien be placed upon real estate attached in the suit, "within four months after such judgment was rendered, it shall hold from the date of such attachment."

Our law authorizing judgment liens to be filed against real estate was enacted in 1878 and has not since been changed. Public Acts of 1878, Chap. 58; General Statutes, § 5233 *et seq.* Section 5232 provides that any person having an "unsatisfied judgment" may cause a certificate, signed by the "judgment creditor" or his attorney or personal representative, to be filed, and prescribes the form; and this form begins as follows: "This is to certify that A. B., of........., on the....day of........, 19.., in the......court holden at........, in the county of........, did obtain a judgment in his favor, against C. D., of........, for the sum of........dollars damages, and........dollars costs of suit, which judgment remains wholly unsatisfied (or, on which judgment the sum of........ dollars is still due)"; and the form continues with the statement that to secure these sums a judgment lien "is hereby placed" upon the real estate described in the certificate. Section 5233 reads as follows: "Such judgment, from the time of filing such certificate, shall constitute a lien upon the real estate described in such certificate; and if such lien be placed upon real estate attached in the suit upon which such judgment was predicated, and within four months after such judgment was rendered, it shall hold from the date of such attachment." Section 5234 provides that no such lien shall be valid as to any real estate, or any interest therein, which might not have been levied upon under an execution on the judgment. In *Beardsley* v. *Beecher*, 47 Conn. 408, decided the year after the law was first enacted, the nature of this lien was discussed,

and it was pointed out that the lien was intended as a substitute for proceedings by way of execution, to be adopted at the option of the creditor, and that it did not constitute a continuance of the attachment lien even when placed upon the property attached, but was a separate lien which, if filed upon that property and within the time fixed, would relate back to the time of the attachment. See also *Ives* v. *Beecher,* 75 Conn. 564, 52 Atl. 746. In *Hobbs* v. *Simmonds,* 61 Conn. 235, 238, 23 Atl. 962, we said: "In our State the right to file a valid judgment lien is wholly a creature of statute. The conditions precedent to the validity of such a lien are all prescribed by statute. Conditions not so prescribed are not essential to the validity of the lien"; and we held that its validity was in no way dependent upon the fact that an execution could not be issued when it was filed because stayed by an appeal to this court, that the provision that no lien would be valid as to any property which might not have been levied upon under an execution, was intended to describe the property which might be subjected to the lien, not to condition the lien upon the fact that the property was then liable to be taken on execution. The judgment lien stands, then, by itself; it is not necessarily co-extensive with the remedy by execution in the sense that it would lie whenever execution would issue; and it can only have validity as we can find that the conditions prescribed in the particular statute creating it have been met. Our question must be, do the terms of the statute fairly permit a lien to be filed, not within four months of the rendition of the judgment in the trial court, but within four months of the affirmation of that judgment upon appeal.

Section 5233 throughout uses the phrase "such judgment," clearly having reference to the "judgment" to which reference was made in the preceding section.

That "judgment" is one by the terms of which a recovery of damages and costs, or costs at least, is awarded to the party filing the lien. Appellate proceedings in this court do terminate in judgments; *Coughlin* v. *McElroy,* 72 Conn. 444, 446, 44 Atl. 743; such judgments ordinarily award costs and, within the limits of the constitutional powers of the court, may award damages; General Statutes, § 5846; Practice Book, p. 322, § 61 *et seq.; Allen* v. *Adams,* 17 Conn. 67, 74; executions may be issued upon them, and judgment liens may no doubt be filed; but such an execution or lien would be directed to recover the amount due by the terms of the judgment of this court, not that due by the judgment from which the appeal was taken. To construe the statute so as to permit the filing of a lien based upon the judgment of the trial court, not within four months of the rendition of that judgment, but within four months of the affirmation of that judgment by this court, would be to read into the statute a provision which certainly has no sanction in any expression of legislative intent. Because stress was laid in argument upon a supposed analogy between the requirements as to valid proceedings under this law and the provisions as to executions, it is worth noting that when, in 1770, executions were first definitely brought into relationship to the lien of prior attachments, the law stated no exceptions to the requirement that, to be effective to hold the property attached, the process of execution must be invoked within sixty days from the rendition of judgment in the action in the case of personal property, and within four months in the case of real estate; and the exceptions in cases where execution is stayed or prevented, were created by legislative enactment many years later. Acts and Laws of Connecticut, 1784, p. 10; Public Acts of 1847, Chap. 3; Public Acts of 1862, Chap. 35; Public Acts of 1865,

Chap. 3. We are not impressed with the picture the Arms Company draws of the dire results of adhering to the language of the statute. The prevailing plaintiff, who desires to have the advantage of his attachment, to be safe, need only file his certificate within four months of the rendition of the judgment in the trial court; if an appeal is taken and the case reversed, that certificate would be, of course, nugatory, as pointed out in *Allen* v. *Adams,* 17 Conn. 67, 74; but should he prevail again in the trial court, he has but to file a new certificate; or, should he not want to file his certificate pending the appeal, he has ample time, should the judgment be affirmed, to proceed by the alternative process of execution. General Statutes, § 5914.

The judgment lien was not filed within such time after the judgment of the trial court was rendered that it would hold from the date of the attachment. This makes it unnecessary to consider other contentions put forward by the Arms Company in support of its claim of priority, except perhaps this, that by reason of the judgment of the trial court, it had an equitable and inchoate lien, which would be effectual against the plaintiff, which had knowledge of the facts. It would suffice to point out that no such knowledge on the part of the plaintiff is found. But if it were, the plaintiff in taking its mortgage would be entitled fully to rely upon the failure of the Arms Company to file its judgment lien within such time as would cause it to hold from the date of the attachment, and upon the abandonment of its right resulting from that failure.

The issue as to the priority of the judgment lien over the mortgage was raised by the first two grounds of plaintiff's demurrer to the answer of the Arms Company, and these grounds the court overruled. They should have been sustained. Certain other paragraphs

of the demurrer were overruled, but the proper disposition of the first two will make it unnecessary to consider any of these rulings except one, which, as it was decided at the trial in plaintiff's favor, we need only discuss in connection with the Arms Company's appeal. There is error and the judgment must be reversed unless the trial court was wrong in its decision that the mortgage was valid.

This decision was based upon the contention at the trial of the case that the mortgage was not valid because it insufficiently defined the debt secured. That mortgage was executed September 27th, 1922, and recited an indebtedness of the mortgagee to the plaintiff to the amount of $38,950, "as evidenced by its sundry promissory notes payable to the order of the said grantee with interest," and its condition was as follows: "Now therefore, if said note and notes for the same amounts or other amounts in renewal thereof shall be well and truly paid according to their tenor, then this deed shall be void, otherwise to remain in full force and effect." Except for the phrase in the condition, "for the same amounts or other amounts in renewal thereof," there would be no question but that the mortgage is valid. *Merrills* v. *Swift,* 18 Conn. 257, 266. What, then, is the effect of this phrase? It does not purport to bring within the security of the mortgage any sums arising from other sources which the mortgagee may come to owe the plaintiff, but only such indebtedness as thereafter may become due upon notes given in renewal of those existing when the mortgage was executed. A "renewal" note, in ordinary usage, is one given in substitution for a prior note of like tenor; but the term is not one of art, and it may also be used to designate a note which is given in substitution for one that has been partially paid or discharged, or one the amount due upon which has been increased by an

accumulation of interest, and clearly the phrase in question is so used here. *New Haven Bank* v. *Jordan Co.*, 92 Conn. 705, 707, 104 Atl. 392; *Lowry National Bank* v. *Fickett*, 122 Ga. 489, 50 S. E. 396; *Kedey* v. *Petty*, 153 Ind. 179, 54 N. W. 798; *Sather Banking Co.* v. *Briggs Co.*, 138 Cal. 724, 733, 72 Pac. 352. The amounts due upon the substituted notes may vary within those limits, but the phrase cannot fairly be construed otherwise than as restricting them to such sums as formed a part of the original debt each evidenced, and the mortgage cannot be interpreted to include any sums not due or to become due as an incident of the debt existing when it was executed. The provision, so understood, surely has all the certainty requisite to give validity to the mortgage. *Lampson Lumber Co.* v. *Chiarelli*, 100 Conn. 301, 306, 123 Atl. 909. In fact, the phrase in question really adds little or nothing to the condition sought to be expressed, because, in such a mortgage as this, the debt is the thing which is secured, the notes merely evidence it, and the mortgage may be foreclosed though new notes, not mentioned in it, have been given in substitution for those originally secured, to the extent of the indebtedness remaining at the time of their execution. *Bolles* v. *Chauncey*, 8 Conn. 389, 392; *Frink* v. *Branch*, 16 Conn. 260, 275; *Boswell* v. *Goodwin*, 31 Conn. 74, 83; *Greist* v. *Gowdy*, 81 Conn. 351, 354, 77 Atl. 555; 2 Jones, Mortgages (7th Ed.) § 927. There was no error in the decision of the trial court that the mortgage was not invalid because of the description of the debt it secured.

The mortgage, in addition to real estate and buildings, purports to convey certain personal property described as follows: "Together with all machinery, tools, implements, fixtures and other personal property tangible and intangible of every kind and description

located in said buildings and being situated upon the said first piece of land herein described." The Arms Company claims that this description is insufficient to convey any interest in the personal property. Beyond question that description does not meet the requirements of the statutes. General Statutes, § 5206; *Hartford-Connecticut Trust Co.* v. *Puritan Laundry, Inc.,* 95 Conn. 172, 179, 111 Atl. 149. The Arms Company has, and claims, no lien upon this property, and no benefit can directly ensue to it, even though the mortgage be held insufficient in this respect, because the Gaynor Manufacturing Company is now in the hands of a receiver; the company, at the trial, raised the question of the invalidity of the mortgage in this respect, not in behalf of the receiver or creditors in general, but in its own right; and, with the receiver a party to the action, as he is, the company is not entitled to have its appeal sustained upon this ground. The receiver so far represents creditors that the mortgage would be invalid to convey personal property as against him; *Gaylor* v. *Harding,* 37 Conn. 508; *In re Wilcox & Howe Co.,* 70 Conn. 220, 232, 233, 39 Atl. 163; *Curtis* v. *Lewis,* 74 Conn. 367, 370, 50 Atl. 878; but he does not appear to have interposed any objection to the judgment authorizing, in general terms, the foreclosure by sale of both real estate and personal property. Moreover, plaintiff's earlier mortgage, which it is also foreclosing in this action, does include a large amount of machinery and equipment, which is sufficiently described to meet the requirements of the statute, and which apparently is the same property included in the general terms of the later mortgage, so that the question may be of little practical consequence. The judgment does, however, in apparent disregard of legal rights, permit the application of the proceeds of the sale of the personal property to the payment of the

debt secured by the later mortagage, and this defect we cannot overlook. *Central Railway & Electric Co.'s Appeal,* 67 Conn. 197, 222, 35 Atl. 32. The receiver is an arm of the court, in whose possession the property of the corporation really is, and the court ought, where it can justly do so, to look through any failure on his part to protect the rights of those interested in the estate, and see that they take no harm from his neglect. *Walsh* v. *Raymond,* 58 Conn. 251, 254, 20 Atl. 464; High, Receivers (4th Ed.) § 134. His appointment transferred to him all the property of the corporation, to be administered by him primarily for the benefit of creditors. *Curtis* v. *Lewis,* 74 Conn. 367, 370, 50 Atl. 878. A correction of the finding sought by the Arms Company, which, though denied by the trial court, we grant, makes it evident that there will be a large deficit of assets with which to pay general claims. The nature of the receiver's right to the personal property of the corporation is such that he would be entitled to claim a marshaling of securities as regards the real and personal property included in the earlier mortgage. *Oliver* v. *Stovall,* 93 W. Va. 88, 96, 115 S. E. 869. Such a procedure could not be adopted, however, if it would result in defeating the right of the plaintiff to full payment of both its mortgage debts. *Butler* v. *Elliot,* 15 Conn. 187, 204; 5 Pomeroy, Equity Jurisprudence (4th Ed.) § 2289. These considerations point to the necessity of selling the real estate and personal property separately, and that course should be adopted, and the judgment should be so framed; but if the parties in interest shall file and the court shall approve a stipulation that they may be sold together and that the amount realized by such sale shall be taken to represent the real and personal property in certain agreed proportions, the decree may provide for the sale of both together; or, lacking such a stipula-

tion, if the trial court shall be of the opinion that it ought to do so, it can reserve the right to refuse to ratify sales of the two kinds of properties made separately, and to order a new sale at which both may be sold together. The decree of foreclosure by sale should not adjudicate the rights of the parties to the fund or funds realized, but such rights should be determined by way of supplementary judgment. General Statutes, § 5228; Practice Book, pp. 529, 531.

There is error upon plaintiff's appeal, the judgment is set aside, and the cause is remanded with directions to the trial court to sustain paragraphs one and two of the plaintiff's demurrer to the answer and counterclaim of the Remington Arms Union Metallic Cartridge Company, and to enter judgment for the plaintiff in accordance herewith. There is no error upon the appeal of the Remington Arms Union Metallic Cartridge Company.

In this opinion the other judges concurred.