## Michael C. Levay v. Josephine S. Levay

Superior Court          Fairfield County          File No. 78747

Memorandum filed January 23, 1952.

*Joseph I. Davidson* and *Harold E. Stuart,* of Stamford, for the Plaintiff.

*Slavitt & Connery,* of South Norwalk, for the Defendant.

CORNELL, J.  A decree of partition of real property by sale was entered on November 1, 1949. The premises having been sold at public auction in accordance therewith, there now remains in the custody of the clerk of the Superior Court for distribution the sum of $11,111.35. The property consists of a parcel of land with a single-family dwelling thereon situated in the town of Darien. The title thereto, when the action was commenced, was in the parties to the cause in equal undivided interests, as tenants in common, who until December 27, 1949, were husband and wife. It was subject to a mortgage upon which an unpaid balance of $3420.24 at the time of sale remained. The purchaser at the sale was the defendant, who had been granted a decree of divorce from the plaintiff on December 27,

1949. Each of the parties claims an equity in the fund over and above the one-half thereof to which he or she would otherwise be entitled.

It appears that the parties married on November 16, 1934. Defendant was then employed as a secretary and bookkeeper at Ring's End Coal Company, in Darien. Soon after they were wed it was agreed by them to open a joint account at the Home Bank and Trust Company at Darien in which defendant would deposit her salary of $37 each week or so much of it as remained after discharging the household expense and maintenance, and plaintiff all the receipts from a small motor trucking and contracting business which he owned. It was understood between them that their joint and individual obligations be paid out of the fund, inclusive of their household expenditures and the cost of operating plaintiff's business. The joint account was opened, it would seem, sometime in 1936 by the transfer to it of the balance of a personal account which defendant then had at the same bank in the sum of $500. It continued in their joint names until an unstated date in 1939, during all of which time both made the contributions agreed upon and checks made by defendant were drawn upon it from time to time in payment of household obligations, the plaintiff's costs and expenses incurred in the conduct of his business and their respective personal requirements. Fearing an attachment as the result of a motor vehicle collision in which defendant was engaged in 1939, the joint account was terminated and a new one opened in plaintiff's name alone, the sum with which the latter was initiated being the unstated balance of the joint account when the latter was closed. This continued until some unnamed date in 1948 under the same arrangement and conditions between the parties as characterized the previous joint account, defendant preparing and plaintiff signing the checks drawn upon it. Plaintiff continued to deposit therein the receipts from his business and defendant her salary throughout all this time with the exception of a period of about two weeks during her confinement when her first child was born on February 17, 1936. Within a short time after the last mentioned event, a woman was hired to remain in the home caring for the baby while defendant continued her former employment, depositing in the account all of her earnings until December, 1941, or January, 1942, preceding the birth of a second child, which latter occurred on September 9, 1942. Since the second child was born defendant has refrained from gainful employment, at the plaintiff's insistence. Defendant

by reason of these facts has made no contribution to the joint fund thus standing in plaintiff's name since December, 1941, or January, 1942.

The parcel of land upon which the dwelling was built, owned by the parties as tenants in common, was purchased by them on June 26, 1940, for the sum of $500 and paid for with funds originally withdrawn from their joint bank account. The erection of the home on the same pursuant to a contract made by them with one Varian on the same date was largely, if not wholly, financed by the proceeds of the two loans to secure which they executed and delivered mortgages, viz., one in the original sum of $5000 to Lomas and Nettleton and the other to Atlantic Industrial Bank of Stamford in the sum of $1050, both executed on January 16, 1941. As above stated, the $5000 mortgage had been reduced at the time of the partition sale to $3420.24 and the second mortgage had been paid off prior to that time.

There is no dispute between the parties concerning their respective interests in the ownership of the realty. Plaintiff, however, claims a proportion of the proceeds of the partition sale commensurate with certain personal expenditures which he allegedly made, to which the defendant assertedly did not contribute. These expenditures, to a material extent consist of the following: Payments on principal of the first (Lomas and Nettleton) mortgage in the aggregate of $1,379.62; payment of interest on said mortgage totaling $1696.93; payment of principal on second (Atlantic Industrial Bank of Stamford) mortgage $1050; payment of interest on the last-mentioned second mortgage, $105; payment of taxes on premises, $780.32. It is found that all of these items were liquidated by checks drawn upon the joint fund to which both parties contributed, as described above, whether the same at the time was in the parties' joint names or in that of plaintiff's only. With respect of the plaintiff's claim of payments totaling the sum of $3000, it will be unnecessary to discuss the items claimed to aggregate this sum. In general, the alleged "necessary repairs and improvements" consisted of some painting of the house, grading of the land surrounding the dwelling, erecting of a stone wall and some other items. The cost of the painting was paid out of the joint fund. All of the material for the grading, the building of the stone wall and other items, as well as the labor involved in each was, also, paid out of the parties' joint bank account,

except that plaintiff contributed some personal work, whether in the form of supervision or otherwise, but how much or the value of same is undiscoverable from the evidence. Whatever this was, or its extent, was not in consequence or in performance of any agreement, express or implied, between plaintiff and defendant that the former was to be compensated for the same. Under such circumstances, the presumption that it was for the joint benefit of both as tenants in common of the property must prevail. *Neumann v. Neumann,* 134 Conn. 176, 179. The fact that defendant consented to plaintiff's labor would not justify an inference that the plaintiff be compensated therefor. See *Neumann v. Neumann,* supra. The conclusion is that plaintiff has not sustained the burden of proof with respect to personal expenditures alleged in paragraphs 3, 4, 5 and 6 of the complaint from his own funds and that he is not entitled to recover for any labor of his own, whether by way of supervision or otherwise, involved in the "repairs and improvements" alleged in paragraph 6 of the complaint. And for this reason is not entitled to an allowance for any of them in computing his share of the distribution of the proceeds of the partition sale.

The defendant's claim to an equity over and above that proportionate to her title to a one-half undivided interest in the premises depends upon a judgment lien filed by her in the Darien town clerk's office on December 31, 1949, in volume 140, at page 47, of the Darien land records against plaintiff's interest in the real estate sold in accordance with the judgment rendered in the present partition suit which she had attached on November 3, 1948, incident to her petition for a divorce referred to above; the certificate of attachment is recorded in Darien land records in volume 129, page 446. The judgment lien so filed of record recites that the plaintiff in that action (who is the defendant in the instant suit) "did obtain a judgment in her favor against Michael C. Levay . . . for a divorce and the custody of children and that the said Michael C. Levay pay to the said Josephine S. Levay the sum of Ten Dollars ($10.00) per week for the support of children and Five Dollars ($5.00) per week for alimony; and to secure said sums, and any lawful interest on any portion remaining wholly unsatisfied, a judgment lien in favor of said Josephine S. Levay is hereby placed on the following described real estate of the said Michael C. Levay," etc. (describing the premises involved in the instant action).

This judgment lien was of record when the committee appointed to sell the premises in this partition suit accepted defendant's bid to purchase it for $15,000 and when, thereafter, she refused to accept a deed to the same because the premises were thereby incumbered as described in *Levay* v. *Levay,* 137 Conn. 92, 94. Following the announcement of the opinion referred to (*Levay* v. *Levay,* supra) the defendant, by a writing bearing the date of September 22, 1950, executed a release of said judgment lien and caused it to be recorded on September 25, 1950, in Darien land records, volume 146, page 541. This release was, by its terms, unconditional and contained no language suggestive of a reservation of any kind. In the face of it, defendant now claims that the court, exercising equitable principles, is bound, nevertheless, considering the circumstances under which the lien was released, to consider it as still existent in equity and the defendant entitled to its benefit in any distribution of the proceeds of the partition sale—that is, in effect, that the lien is annexed to the fund derived from the sale of the premises to which it attached. It is unnecessary to examine this theory since it is based on the premise that the judgment lien was a valid incumbrance—an hypothesis which cannot be conceded for the reasons which follow.

In Connecticut the pertinent statute provides for judgment liens of two classes, namely (a) those which arise as a consequence of an attachment filed in connection with a suit and (b) those filed without a prior attachment for an unsatisfied judgment obtained in any court of this state or of the United States rendered within this state. A certificate filed under the latter provision takes effect from the time it is filed; under the former from the date of attachment. General Statutes § 7225. The judgment lien here involved is of the latter character.

A judgment lien is a statutory creation. *City National Bank* v. *Stoeckel,* 103 Conn. 732, 736. The statutes which authorize judgment liens (General Statutes § 7225 et seq.) in this state, limit their availability to those instances only where the judgments upon which they are based award damages in money. *Waterbury Lumber & Coal Co.* v. *Hinckley,* 75 Conn. 187, 191. The nature of a judgment lien in Connecticut is that of an alternative to taking out execution to enforce payment of a money judgment. *Beardsley* v.*Beecher,* 47 Conn. 408, 416; *City National Bank* v. *Stoeckel,* supra, 737 (in which it is said that the remedy of a judgment lien is "intended as a substitute

for proceedings by way of execution"). While it is not necessarily coextensive with an execution (*City National Bank* v. *Stoeckel,* supra), a characteristic common to both is that not only must the judgment to be enforced be one for money damages (*Waterbury Lumber & Coal Co.* v. *Hinckley,* supra; see *Humphrey* v. *Gerard,* 83 Conn. 346, 356, 357) but "for the payment of a definite and certain sum of money" (49 C. J. S. 888, § 458) due at the time of the entry of the judgment. *Enoch* v. *Walter,* 209 Ill. App. 619, 621. Since a judgment lien will secure only a judgment debt due and collectible at the time it is filed, it follows that a judgment for periodic instalments for an indefinite time may not be the subject matter of a judgment lien. See 49 C. J. S. 888, § 458, and n. 62.

Applying practically the same principles, the opinion in *Mansfield* v. *Hill,* 56 Ore. 400, 408, states: "The provision of the divorce decree for future monthly payments by defendant until the further order of the court, being for an indefinite time and amount not yet accrued, is not a definite liability or a judgment for a specific sum which may become a lien upon his property. The very idea of a lien upon property involves certainty as to the amount, so that persons dealing with defendant, as well as defendant himself, may know how much is involved; otherwise he would be precluded from dealing with his property at all, since it would be impossible for him to pay the lien." As noted supra, the judgment involved in the instant case is not one for a definite sum, but for periodic payments for an indefinite time. It is the conclusion that the judgment lien filed by defendant against the undivided one-half interest in the real estate sold in this action of partition, the proceeds of which are now the subject of distribution, is void and of no effect and not to be considered in determining what portion of the fund each party is entitled to. It would seem unnecessary to discuss the claim that even if the judgment lien is void, the attachment made at the commencement of the divorce action is yet a valid incumbrance. The contention is without merit. General Statutes §§ 8026, 8073; *City National Bank* v. *Stoeckel,* 103 Conn. 732, 737.

It is the judgment that the proceeds of the partition sale are to be distributed equally to the parties to the instant cause, viz., the sum of $5555.67 to plaintiff and $5555.68 to defendant.