## The Second National Bank of New Haven *vs.* James A. Dyer et al.

Maltbie, C. J., Hinman, Banks, Avery and Brown, Js.

Argued March 3d—decided April 7th, 1936.

*J. Dwight Dana,* with whom was *Frank E. Callahan,* for the appellant (defendant The Prudential Insurance Company of America).

*Leonard M. Daggett,* with whom was *I. Gordon Colby, Jr.,* for the appellee (plaintiff).

MALTBIE, C. J. The plaintiff brought this action to foreclose a mortgage made by the defendant James A. Dyer to the Thomas F. Clark Company and assigned by that company to it. The Prudential Life Insurance Company was made a defendant as claiming an interest in the mortgaged premises by reason of an assignment of the same mortgage to it by the Clark Company, which was alleged to be subsequent to the assignment to the plaintiff. The Insurance Company, to which we shall hereafter refer as the defendant, filed an answer and cross-complaint. The cross-complaint gave a rather detailed history of the transaction and to it were annexed copies of the various instruments involved in the controversy. Its allegations, so far as material to the issue decisive of the case, state the following situation: The Clark Company, which was engaged in the business of loaning money on mortgages, had a contract with the defendant giving to it the exclusive right to submit to the defendant applications for loans on improved real estate in certain towns, one being that in which the real estate included in the mortgage here in question was located. It was the practice of the defendant not to take mortgages to secure loans for construction purposes until the improvements had been completed. To provide funds for the construction of the improvements the Clark Company would obtain a loan from some bank, assigning to it as security a mortgage made to it to secure the advances to the mortgagor. Upon the completion of the improvement the defendant would purchase the mortgage upon the Clark Company furnishing it with the mortgage note and deed and a certificate of title.

The defendant approved an application submitted by the Clark Company for the loan to Dyer. Dyer then executed the note and mortgage in question to

the Clark Company. The company made a written assignment of the mortgage to the plaintiff as collateral security for a loan. This assignment was never recorded. Subsequently the Clark Company executed and delivered to the First National Bank and Trust Company of New Haven an assignment of the same mortgage as collateral security for a loan, furnished the bank a certificate of title showing that the company held the mortgage as of record, and also indorsed and delivered to it an instrument which purported to be but was not in fact the note secured by the mortgage. Later the mortgage and the false note were reassigned to the Clark Company, by a written instrument duly recorded. Meanwhile the Clark Company had furnished to the defendant a certificate of title showing that the land records disclosed the Dyer mortgage to be owned by it and its assignment to the First National Bank. Thereafter the Clark Company delivered to the attorneys who were representing the defendant the false mortgage note, the original assignment to the First National Bank, its reassignment to the Clark Company, and an assignment of the mortgage by the company to the defendant; and the attorneys caused the last two instruments to be recorded. The defendant had no knowledge of the assignment of the mortgage to the plaintiff and accepted as genuine the note delivered to its attorney, in reliance upon the title to the mortgage as disclosed by the record referred to in the certificate of title. The defendant sought in its cross-complaint a judgment that it was the owner and holder of the mortgage and debt secured thereby and that the plaintiff indorse without recourse and deliver to it the note actually secured by the mortgage. The plaintiff filed a demurrer to the cross-complaint which the trial court sustained, and, the defendant refusing to plead over,

judgment was entered upon the cross-complaint for the plaintiff.

The defendant claims that, because of the failure of the plaintiff to record the assignment of the mortgage to it the latter cannot assert any right to the mortgage or the indebtedness secured by it as against the defendant. Section 5010 of the General Statutes provides: "No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies." We have never expressly decided whether an assignment of a mortgage falls within the purview of this statute. Mortgages have always been regarded as conveyances of land within the meaning of the recording statute. An assignment of a mortgage passes to the assignee all the title the mortgagee had in the land. General Statutes, § 5029; *Cohn* v. *Bridgeport Plumbing & Supply Co., Inc.,* 96 Conn. 696, 702, 115 Atl. 328; *State* v. *Parker,* 112 Conn. 39, 51, 151 Atl. 325. The assignment is in effect a conveyance of the land included in the mortgage. In *Quinebaug Bank* v. *French,* 17 Conn. 129, we held that where a mortgage had been placed upon certain property and duly recorded and subsequently, by various conveyances, the record title to the land had vested in the defendant, the rights of an attaching creditor were to be determined upon the basis of that title, in disregard of an unrecorded assignment of the mortgage. In *Gregory* v. *Savage,* 32 Conn. 250, notes secured by a mortgage were negotiated and the mortgage securing them was assigned; thereafter one of the notes was further negotiated to the plaintiff; the assignee of the mortgage quitclaimed to the mortgagor; we held that the plaintiff could not foreclose the land as against a purchaser from the mortgagor who had thereby acquired the record title to the land

free of the mortgage; and while there was in that case no assignment of the mortgage to the plaintiff, the reasoning of the court is obviously based upon the proposition that the plaintiff, to protect his interest, must not only have had such an assignment but it must have been duly recorded. In *Mechanics Bank* v. *Johnson*, 104 Conn. 696, 700, 134 Atl. 231, we held that payments made to a mortgagee after he had assigned the mortgage and the assignment had been recorded were not binding upon the assignee in the absence of proof of agency, estoppel, and the like.

That an assignment of a mortgage falls within the purview of the recording statute follows from the nature of such an instrument and is plainly indicated in the cases we have cited. Indeed, to hold otherwise would make a serious inroad upon the policy of this State that purchasers of interests in real estate are entitled to rely upon the land records as disclosing the true title; it would make it possible for a mortgagee to mislead purchasers of land by vesting in the mortgagor, through a release of the mortgage, an apparently clear title, when in fact the mortgage might still be subsisting by reason of an outstanding unrecorded instrument; and the recording statute would give no protection to an assignee of the mortgage as against a prior unrecorded assignment. The very case before us illustrates the injustice that may result in such a situation, for all the plaintiff needed to do fully to protect its interests was to record the assignment made to it, whereas, that not having been done, the defendant paid full value for the assignment made to it after taking such precautions through a search of the record as it might reasonably rely upon to assure the transfer to it of a good title. Our conclusion that an assignment of a mortgage falls within the purview of the recording statute is confirmed by the statute

concerning the garnishment of debts secured by mortgages or liens (§ 5780), for it is there provided that if the provisions of the statute are followed, the creditor may file for record a judgment lien upon the mortgage or lien and his rights thereunder will not be affected by any instrument not appearing of record prior to the filing in the town clerk's office of his certificate of attachment; and the effectiveness of this procedure would be seriously affected if the judgment lien were to be subordinated to unrecorded assignments of a mortgage.

The difficult question in this case is as to the effect of a failure to record an assignment upon the rights of a subsequent assignee. Ordinarily, as between the indebtedness and the mortgage securing it, the indebtedness is the principal thing and the security incidental; an assignment of the debt carries with it the right and benefit of the security, though that be not assigned; and an assignment of the security apart from the debt transfers the bare title, the beneficial interest in which remains with the owner of the debt. *Bulkley* v. *Chapman,* 9 Conn. 5, 9; *Dudley* v. *Cadwell,* 19 Conn. 218, 227; *Chamberlain* v. *Connecticut Central R. Co.,* 54 Conn. 472, 484, 9 Atl. 244; *Farrell* v. *Lewis,* 56 Conn. 280, 283, 14 Atl. 931; *Soule* v. *Borelli,* 80 Conn. 392, 400, 68 Atl. 979; *Pettus* v. *Gault,* 81 Conn. 415, 422, 71 Atl. 509; *Waterbury Trust Co.* v. *Weisman,* 94 Conn. 210, 218, 108 Atl. 550. In this case it appears from the exhibits attached to the cross-complaint that the assignment to the First National Bank, its reassignment to the Clark Company and the assignment of that company to the defendant did not purport to be a bare assignment of the Dyer mortgage but specifically included the note secured by that mortgage. The fact that there was delivered to the defendant with the assignment a forged note would not,

except for the prior assignment to the plaintiff, detract from the force of the assignment as transferring to the defendant the indebtedness represented by the genuine note as far as regards proceedings to enforce the mortgage, for the note is merely the evidence of the indebtedness secured. *Bolles* v. *Chauncey,* 8 Conn. 389, 392; *Greist* v. *Gowdy,* 81 Conn. 351, 354, 71 Atl. 555; *City National Bank* v. *Stoeckel,* 103 Conn. 732, 741, 132 Atl. 20. The issue here is not between one to whom an indebtedness has been assigned and another to whom the bare security for that indebtedness has been transferred, but between two parties each of whom holds an assignment of the debt and the mortgage securing it.

Apart from the effect of the recording statute, the plaintiff would of course be prior in right; the assignment to it transferred to it, as between it and the Clark Company, the entire debt and mortgage and left nothing which the Clark Company might assign to the defendant. The statute in terms provides simply that "no conveyance shall be effectual to hold any land against any other person but the grantor and his heirs," unless it is duly recorded. Upon that simple provision has been builded a policy with reference to recording conveyances of land which has been described by us in *Goldberg* v. *Parker,* 87 Conn. 99, 108, 87 Atl. 555, as follows: "Any other holding would do violence to the faith which, time out of mind, we have given to our registry laws. With inflexible adherence we have made every title to land, so far as practicable, appear of record. We have held the record constructive notice to all the world of land titles. We have authorized reliance to be placed thereon. We have sustained contracts and conveyances made upon their faith. We cannot hold that a credit, extended in reliance upon the land records, must yield to the equitable

owner of the title without doing irreparable injury to the registry laws and going counter to our decisions. The maintenance of our system of registry of titles is of the greatest public importance, and he who acts in reliance upon the record has behind him not only the natural equities of his position, but also the especial equity arising from the protection afforded everyone who trusts the record." In pursuance of that policy we have gone beyond the express terms of the recording statute and, as was held in the last case cited, have given the protection of the recording system to those who have given credit to one appearing upon the record to be the owner of the property although he had no beneficial right in it. See also *Ives* v. *Stone,* 51 Conn. 446; *Curtis* v. *Lewis,* 74 Conn. 367, 372, 50 Atl. 878; *Sanford* v. *DeForest,* 85 Conn. 694, 84 Atl. 111; *Basak* v. *Damutz,* 105 Conn. 378, 135 Atl. 453. The basis of the protection so afforded is an equitable estoppel which arises out of the fact that the person who has failed to record the instrument under which he claims has thereby misled creditors into the belief that title is in the person who appears upon the record to own the property. *Waterman* v. *Buckingham,* 79 Conn. 286, 292, 64 Atl. 212; *Goldberg* v. *Parker,* supra; *Wiley* v. *London & Lancashire Fire Ins. Co.,* 89 Conn. 35, 44, 92 Atl. 678. The person claiming the property may have a good title to it, but as against anyone who is entitled to rely upon the record he is barred from asserting that title.

Only by an analogous application of the policy of the recording statute can it be made to afford protection as regards assignments of mortgages. If the failure to record an assignment of a mortgage and the debt it secures had no further effect than to estop the assignee from asserting a right to the benefit of the mortgage, a subsequent assignee of the debt and mort-

gage would be left in the position of holding a mortgage without any indebtedness secured by it; he would have a bare title to the mortgage; and under the authorities we have cited, he would hold that title for the prior assignee in whom, by his ownership of the debt, the beneficial interest in the security would still be vested. The protection of the recording statute in such a case would be for him but an empty form. In such a situation, the first assignee, as between himself and the assignor, has become the owner of the indebtedness and the assignor has nothing which he has any right to transfer to the second assignee. But under the principle of estoppel which governs the application of the recording system in such a case, by his failure to record his assignment the first assignee is barred from claiming a right to collect the indebtedness through the enforcement of the mortgage as against the subsequent assignee. The situation is no different from that which arises where the owner of land conveys it, but the deed is not recorded; that deed passes the title to the grantee and leaves nothing in the ownership of the grantor which he has any right thereafter to convey; yet if he does make a subsequent deed of the property, the grantee in that deed is recognized as owner, because the grantee in the earlier deed may not assert his title against him. When the defendant took the assignment from the Clark Company which purported to transfer to it the mortgage and the debt secured by it, it thereby acquired a right to collect that debt through the enforcement of the mortgage and as regards that right the plaintiff cannot claim priority.

Of the cases from other jurisdictions cited by the plaintiff, only two present situations sufficiently analogous to the one before us to merit consideration. In one, *Lee* v. *Kellogg,* 108 Mich. 535, 66 N. W. 380, a

mortgage and the notes secured by it were sold and delivered to the defendant with the usual form of assignment; before the assignment was recorded, the assignor forged another mortgage and other notes and sold and delivered them to the plaintiff, after he had made inquiry and ascertained that the assignor was the record owner of the mortgage; the court held that the defendant had a prior right upon the ground that forged papers could not be made a basis of recovery against one who in good faith holds and owns the genuine papers; the facts in that case are dissimilar to those before us, the opinion is very brief, and the effect of the failure of the first assignee to record his assignment seems not to have been much considered; and the case is not at most impressive authority. In the other case, *Southern Building & Loan Asso.* v. *Brackett,* 91 Tex. 44, 40 S. W. 719, the issue considered was as to the priority of right between an assignee of a note and the vendor's lien securing it, where that assignment was not recorded, and a subsequent assignee of a duplicate of the original note in connection with a trust deed of the property securing a loan made by the assignee, the instruments purporting to subrogate the assignee to the rights under the vendor's lien; and the court held that, by the neglect of the first assignee to record his assignment, his rights became subordinate to those of the second assignee. In *Price* v. *Northern Bond & Mortgage Co.,* 161 Wash. 690, 297 Pac. 786, the note and mortgage in question were assigned to a bank, which did not record the assignment until more than three years after its delivery; meanwhile the respondents had purchased from the assignor, a mortgage company, participating certificates in the mortgage; the mortgage company became insolvent and the mortgagors paid the receiver the amount due upon the mortgage and the question arose

in a proceeding in the nature of an interpleader between the bank and the respondents; the Washington statute expressly requires that assignments of mortgages should be recorded, and if this is done it is provided that they are valid as against bona fide purchasers and that the record is notice to all the world; and the court held that the wrong was perpetrated because of the negligence of the bank in withholding its assignment from record and that the respondents were entitled to the money paid to discharge the mortgage.

The allegations of the cross-complaint state a situation which, if proved, would give to the defendant a prior right as regards the collection of the indebtedness by a foreclosure of the mortgage securing it. Whether the specific relief sought is the proper method of working out the rights of the parties we have no need to inquire, as the demurrer was addressed solely to the substance of the pleading and not to the prayers for relief.

There is error, the judgment is set aside and the case remanded to be proceeded with according to law.

In this opinion the other judges concurred.