## HARRY RICHMOND
### vs.
## WARD MALKIN, ET ALS.

Superior Court      Fairfield County      File #54948

MEMORANDUM FILED MARCH 31, 1938.

Ned E. Ostmark, of Fairfield, for the Plaintiff.

Taylor & Lovejoy, of South Norwalk; Hereward A. Wake, of Westport; Earl H. Jagoe, of Westport; Keogh & Candee, of South Norwalk, for the Defendants.

Ward Malkin, pro se.

E. L. Sutherland, pro se.

CORNELL, J. In this action of foreclosure, the contro-versy is concerned with the relative priorities of certain de-fendant junior encumbrancers—first as between two holders of mortgages, Mildred Buchta and Julia E. Barnard and, second, as between Mildred Buchta and a mechanic's lienor, The Hatch & Bailey Company.

As between Mildred Buchta and Julia E. Barnard, the fol-lowing situation is delineated by the evidence: On September 19, 1936 the defendant Malkin owned the equity in the real estate under foreclosure which was at that time subject to three mortgages. On that date he executed and delivered to the defendant Mildred Buchta a fourth mortgage in the sum of $700 which, however, was not recorded at that time, nor until August 4, 1937. In the interim, on May 10, 1937, the defendant Malkin conveyed his interest in the equity to the defendant C. Lindsay Sutherland, free and clear of all encum-brances except zoning regulations and "mortgages as appear of record." There is no evidence to indicate that Suther-land either had actual knowledge or notice of any circum-stance which, if pursued by inquiry, would have apprised him of the fact that the defendant Buchta at the time was the holder of the unrecorded mortgage delivered to her on Sep-tember 17, 1936.

In view of this circumstance, and because defendant Buchta failed to comply with the requirements of section 5010 of the General Statutes, Revision of 1930, in neglecting to record her mortgage within a reasonable time following its delivery to her, Sutherland acquired a title to the property free from the lien of the Buchta mortgage. *Second National Bank of New Haven vs. Dyer,* 121 Conn. 263; *Cressey vs. Phelps,* 2 Root 420.

On July 27, 1937 and while the defendant Mildred Buchta's mortgage was still unrecorded, defendant Sutherland executed and delivered a mortgage on the premises to defendant Julia E. Barnard, in the sum of $1,000, which, however, was not immediately recorded nor until August 9, 1937 and in the meantime, on August 4, 1937, defendant Mildred Buchta filed for record the mortgage which had been given to her by defendant Malkin on September 19, 1936.

Defendant Buchta on this state of facts, contends that since her mortgage was recorded prior to defendant Barnard's, it is an encumbrance senior to it, by virtue of section 5010 of the General Statutes, Revision of 1930, which provides in part: "No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies . . ." In the absence of countervailing equities, that would be so if the grantor of the Buchta mortgage still had title of record when the latter was filed in the town clerk's office and the grantor of the Barnard mortgage had been Malkin instead of the latter's successor in title, Sutherland. But defendant Barnard was justified in relying upon the title to the land as the record disclosed it and this informed her that the title in the name of Sutherland, who was her grantor, was free of a mortgage given either by the latter or any of his predecessors in title to defendant Buchta. "The basis of the protection so afforded is an equitable estoppel which arises out of the fact that the person who has failed to record the instrument under which he claims has thereby misled creditors into the belief that title is in the person who appears upon the record to own the property. . . . The person claiming the property may have a good title to it, but as against anyone who is entitled to rely upon the record he is barred from asserting that title." *Second National Bank of New Haven vs. Dyer,* 121 Conn. 263, 271. The defendant Barnard, moreover was chargeable with notice only of recorded conveyances made by the defendant Sutherland during the time that the title stood of record in the latter's name. *Hawley vs. McCabe,* 117 Conn. 558, 563, 564; *Wheeler vs. Young,* 76 Conn. 44, 51. It follows that the defendant Barnard's right to redeem and the order in which she is entitled to do so is not affected by the recording of the Buchta mortgage prior to her own and her mortgage has priority over defendant Buchta's.

It next appears that on or about September 22, 1937 Malkin

delivered to defendant Buchta an assignment drawn on defendant Sutherland in favor of defendant Buchta requiring Sutherland to pay to her the sum of $166 out of a balance of the purchase price of the property owing by Sutherland to Malkin, which the latter caused to be delivered to defendant Sutherland on that date and incidentally to this, defendant Sutherland then learned of the existence of the Buchta mortgage. Thereafter, on October 15, 1937 Sutherland conveyed his equity in the mortgaged premises to the defendant, The Stamford Housing Corporation, by deed recorded on that date, and on November 15, 1937 The Stamford Housing Corporation executed and delivered a mortgage to defendant Julia E. Barnard in the sum of $500. Defendant Buchta claims priority over this, contending that, unlike the situation with respect to the mortgage delivered to defendant Barnard, on July 27, 1937 (1) the Buchta mortgage already appeared of record at the time that the $500 mortgage was executed to defendant Barnard, and (2) the defendant Sutherland had actual knowledge of the fact that Malkin had given the mortgage to defendant Buchta and as he was president of the defendant, The Stamford Housing Corporation, the latter was, also, charged with such knowledge. Without so deciding, it may be granted that The Stamford Housing Corporation had actual knowledge of the existence of the Buchta mortgage at the time it gave the $500 mortgage to defendant Barnard. The seemingly well established rule, however, is ". . . that if a second purchaser for value and without notice purchases from a first purchaser who is charged with notice, he thereby becomes a bona fide purchaser, and is entitled to protection." 2 Pomeroy, Equity Jurisprudence (4th ed.) §754. There is no evidence that either Sutherland, personally, or as president of The Stamford Housing Corporation, communicated any information to defendant Barnard to the effect that defendant, Buchta, claimed an interest in the premises as a mortgagee or that defendant, Barnard, herself acquired such knowledge from any other source or intelligence such as, if pursued by inquiry, would have led to the ascertainment of that fact.

Neither can defendant Barnard be charged with constructive notice derived from the fact that the Buchta mortgage was recorded at the time that she accepted the $500 mortgage from The Stamford Housing Corporation. That mortgage was, as noted supra, from Ward G. Malkin to Mildred Buchta, but when it was filed, the record title was in the name of defendant Sutherland. "It is a settled doctrine . . . that a

record is only a constructive notice to subsequent purchasers, deriving title from the same grantor." 2 Pomeroy, Equity Jurisprudence (4th ed.) §658. The recording of the mortgage from Malkin to Buchta while the record title was in the name of Sutherland, was, consequently, no constructive notice to defendant Barnard in accepting the mortgage from The Stamford Housing Corporation. *Baker vs. Griffin,* 50 Miss. 158; *Hawley vs. McCabe, supra; Kulmacz vs. Milas,* 108 Conn. 538, 541, 542. The mortgage in question is, hence, entitled to priority over the Buchta mortgage.

As respects the question of priority between the Buchta mortgage and the mechanic's lien filed by the defendant, The Hatch & Bailey Company, the following facts appear: The Hatch & Bailey Company commenced to furnish materials on June 7, 1937 and recorded its lien on November 8, 1937. As noted supra, the Buchta mortgage was dated September 19, 1936 and hence was delivered approximately nine months before the first material was delivered to the premises by The Hatch & Bailey Company. On the other hand, the date when materials were first commenced to be furnished by The Hatch & Bailey Company antedates the day when the Buchta mortgage was recorded (August 4, 1937) by about two months. It, hence, appears—eliminating from consideration the effect, if any, of the recording of the Buchta mortgage only after the grantor in it had parted with the title of record—that the Buchta mortgage though given prior thereto, was, nevertheless, not recorded until subsequent to the time when the mechanic's lien of The Hatch & Bailey Company had "originated." Moreover, the period during which The Hatch & Bailey Company continued to furnish materials began on June 7, 1937 and ended November 5, 1937 from which the inference is drawn that the house for which such materials were furnished was during that time in course of construction. This granted, it becomes manifest that the date on which the Buchta mortgage was recorded (August 4, 1937), was during the period of such construction. It is provided by section 5015 of the General Statutes, Revision of 1930, that: "If any instrument constituting a valid incumbrance upon such land other than a mechanic's lien shall be filed for record while such building is being constructed, raised, removed or repaired, all such mechanic's liens originating prior to the filing of such incumbrance for record shall take precedence over such incumbrance. . . ." These provisions, it is apparent, make the

criterion of priority, not precedence in creation of a valid encumbrance by an owner of property, over a mechanic's lien, but the recording of it, provided the structure for which labor or materials are furnished is then in course of construction, removal, repair or raising. Since the Buchta mortgage, if otherwise valid and prior to the mechanic's lien of The Hatch & Bailey Company, was not recorded until after the latter's lien had originated and the building was then still being constructed, it follows that such mechanic's lien had priority over it.